UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CASE NO. _____

| | |
|---|---|
| SHELBY'S EXTRAORINAIRE, LLC, on behalf of itself s and all others similarly situated,<br><br>**Plaintiffs**<br><br>vs.<br><br>CITIZENS BANK OF PENNSYLVANIA,<br><br>**Defendant.** | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff, SHELBY'S EXTRAORDINAIRE, LLC, individually and on behalf of itself, and all persons similarly situated, sues Defendant, CITIZENS BANK OF PENNSYLVANIA ("CITIZENS"), and alleges as follows:

**INTRODUCTION**

1.      This is a civil action seeking monetary damages, restitution, and injunctive relief, against CITIZENS, arising from CITIZENS's routine practice of wrongfully assessing what CITIZENS calls a "Sustained Overdraft Fee."

2.      As alleged in detail below, this purported "fee," which initially was $6.99 and was raised to on March 7, 2016 $30.00, is assessed by CITIZENS against a customer's account in addition to an initial $39.00 overdraft fee, when the customer's account remains negative for a period of time.  In reality, the assessment and collection of the Sustained Overdraft Fee from its customers constitutes interest for the use, forbearance, or detention of money.  The amount of

interest charged far exceeds the permissible limit under the laws of the state of Pennsylvania and is, therefore, usurious.

## PARTIES

3.      Plaintiff is a limited liability company with its principal place of business in Aldan, Pennsylvania, and is organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant, Plaintiff maintained a bank account with CITIZENS and was provided banking services by CITIZENS in this District.

4.      Defendant, CITIZENS, is a state chartered bank with its headquarters and principal place of business located in Philadelphia, Pennsylvania.  CITIZENS is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class, which includes the issuance of checks and debit cards for use by its customers in conjunction with their checking accounts.  CITIZENS operates branches, and thus conducts business, in this District.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District, including CITIZEN's operation of retailing banking branches and its provision of banking services involving the issuance of checks and debit cards to Plaintiff and members of the putative class.

<u>**OVERVIEW**</u>

7.      The gist of the Sustained Overdraft Fee is as follows:  If a customer's account is in overdraft status (i.e. has a negative balance) by some amount, CITIZENS charges an overdraft fee of $39.00 for each transaction that is paid while the balance remains negative.

8.      Thereafter, if the account remains negative for a specific period of time because the customer did not make a deposit to bring it positive, the customer will have to pay an additional fee – the Sustained Overdraft Fee – to CITIZENS.  Thereafter, if the account continues to remain negative, CITIZENS continues to charge additional Sustained Overdraft Fees.

9.      Unlike an initial overdraft fee, the Sustained Overdraft Fee is an additional charge to a customer for which CITIZENS has provided nothing new in the way of services.  The charge is based solely on the alleged indebtedness to CITIZENS remaining unpaid by the customer for a period of time.

10.      By way of background, overdraft fees have been a substantial source of revenue for banks for a number of years.  Overdraft fee revenues continue to proliferate.  As technology has rapidly grown and enabled bank customers new ways to access the money in their accounts, overdraft episodes and the attendant imposition of overdraft fees have skyrocketed.  Recent reports from the U.S. Consumer Financial Protection Bureau ("CFPB"), for example, show that a broad investigation has been launched regarding bank overdraft practices and procedures due to its concern that the growing cost of overdraft practices could place bank customers at unnecessary risk.  In 2012 alone, banks took in approximately $32 billion in overdraft-related fees.

11.      As a recent CFPB report reflects, "sustained negative balance" fees are becoming popular with banks and account for nearly 10% of total overdraft-related fees collected by banks that impose such charges.  According to the CFPB report issued in July 2014, negative balances

are likely cured by the customer within just a few days, rather than weeks.  As such, the bank's

extension of credit to its overdrawn customer is typically very short-term.  Moreover, most

negative balances created by an overdraft are not high figures.  Nearly two-thirds of transactions

that cause overdrafts were for $50.00 or less.  As these statistics highlight, a bank's exposure for

carrying a customer's overdraft is ordinarily very small and limited.  But rather than charging

legally permissible interest until its customer cures the overdraft balance, CITIZENS instead

charges a Sustained Overdraft Fee that in reality is interest at an illegal rate.

## CITIZENS BANK OF PENNSYLVANIA'S PRACTICE

12.    The specific issue in this case is CITIZENS's practice of deducting the Sustained

Overdraft Fee from the accounts of its customers, including Plaintiff and others similarly situated.

13.    Specifically, CITIZEN's current Sustained Overdraft Fee policy that went into

effect on March 7, 2016, is as follows: if a customer fails to replenish his, her, or its account to

bring the negative balance positive after 4 consecutive business days, on the 5th business day

CITIZENS charges a Sustained Overdraft Fee of $30.00.  Thereafter, if the account is not brought

positive after 7 consecutive business days, CITIZENS charges another Sustained Overdraft Fee on

the 8th business day, and then it charges a third Sustained Overdraft Fee on the 11th business day,

if the account is not brought positive after 10 consecutive business days, with maximum Sustained

Overdraft Fees of $90.00.

14.    Prior to March 7, 2016, CITIZENS' Sustained Overdraft Fee policy was as follows:

if a customer failed to replenish his, her, or its account to bring the negative balance positive after

3 or more consecutive business days, on Day 4 CITIZENS began to charge a Sustained Overdraft

Fee of $6.99 per day, for each day the account remained overdrawn, with a maximum Sustained

Overdraft Fees of $69.90.

15.     The Sustained Overdraft Fees are all charged to the customer by CITIZENS for having extended credit for the various periods the account remained negative.

16.     CITIZENS renders no additional service to its customers in exchange for charging this extra fee other than advancing the original money to a customer's account in an amount to cover the overdraft, for which CITIZENS previously charged the initial overdraft fee(s). CITIZENS uses the fact that it has loaned funds to its customer as a pretext to justify charging the customer multiple subsequent charges that exceed lawful limits, rendering the Sustained Overdraft Fee a usurious charge.

17.     There is nothing in CITIZENS's written materials disclosing that this additional "fee" is, in reality, a charge of interest on extended credit.

18.     In Plaintiff's case, its account statement for the date range October 1, 2016 through October 31, 2016, shows that it went into overdraft status on October 12, 2016, a $39.00 overdraft fee was assessed on October 13, 2016, and the account remained in that status through October.

19.     Because the account remained negative, on October 18, 2016, CITIZENS charged Plaintiff a first Sustained Overdraft Fee of $30.00, a second Sustained Overdraft Fee on October 21, 2016, and then a third Sustained Overdraft Fee on October 26, 2016.

20.     Between October 12, 2016 and October 26, 2016, Plaintiff's negative account balance fluctuated between negative $21.96 and negative $150.96.

21.     The Sustained Overdraft Fees identified in paragraph 19 above are examples of usurious charges made on Plaintiff's two CITIZENS accounts.

## CLASS ALLEGATIONS

22.     Plaintiff brings this action on behalf of itself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity,

commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

23.     The proposed class is defined as:

All CITIZENS checking account holders in the United States who within the applicable statute of limitations period prior to the date of filing this Complaint, through the date of class certification, who were assessed one or more Sustained Overdraft Fees ("the Class").

24.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

25.     Excluded from the Class are CITIZENS, its parents, subsidiaries, affiliates, officers and directors, any entity in which CITIZENS has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

26.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only through CITIZENS's records.

27.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged Sustained Overdraft Fees by CITIZENS.   The representative Plaintiff, like all Class members, has been damaged by CITIZENS' misconduct in that it has been assessed usurious Sustained Overdraft Fees. Furthermore, the factual basis of CITIZENS' misconduct is common to all Class members, and represents a common thread of unfair conduct resulting in injury to all members of the Class.

28.     There are numerous questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual Class members.

29.     Among the questions of law and fact common to the Class are whether CITIZENS:

        a.     Charged interest to its customers under the guise of a Sustained Overdraft

Fee in amounts that violate applicable usury laws;

    b. Developed and engaged in an unlawful practice that mischaracterized or concealed the true usurious nature of the Sustained Overdraft Fee;

    c. Charged its customer a Sustained Overdraft Fee that bears no relationship to the actual costs and risks of covering insufficient funds transactions, and is instead based on the amount of time credit has been extended when the account is in a negative balance condition; and

    d. Plaintiff and other members of the Class have sustained damages as a result of the assessment and collection of the Sustained Overdraft Fees, and the proper measure of damages.

  30. Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices of CITIZENS' checking account agreements. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

  31. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

  32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of CITIZENS, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and CITIZENS' conduct will proceed without remedy.

33.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

34.    CITIZENS has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief, as described below, with respect to the Classes as a whole.

**FIRST CLAIM FOR RELIEF**
**Violation of 41 Pennsylvania Statutes Section 201 – Maximum Lawful Rate of Interest**

35.    Plaintiff re-alleges paragraphs 1 through 33, as if fully set forth herein.

36.    Interest, by definition, is compensation for the use or forbearance of money or as damages for its detention, typically measured by time, which is exactly the case with CITIZENS' Sustained Overdraft Fee.  Any such charges imposed on a customer for use or forbearance of money or as damages for its detention – no matter how labelled by CITIZENS – are in fact interest and in this case usurious, as alleged below.

37.    In Pennsylvania, the maximum rate of interest on unwritten loans of $50,000 or less is 6% per annum.  41 Penn. Cons. Stat. §201 et seq.

38.    It is usurious in Pennsylvania to charge an interest rate greater than 6%, and the penalty for doing so is payment to those charged in the amount of three times the interest charged, along with attorneys' fees and costs.

39.    By assessing and collecting Sustained Overdraft Fees, CITIZENS has knowingly

extended credit to Plaintiff and others similarly situated for use in their checking and/or money market accounts. Such extensions of credit are loans without a specific loan agreement.

40.    Although CITIZENS is only permitted to charge Plaintiff and others similarly situated a maximum of 6% annualized interest on these loans and extensions of credit, CITIZENS has knowingly charged and collected Sustained Overdraft Fees from Plaintiff and others similarly situated that far exceeded the legal rate.

41.    Using the maximum amount of Plaintiff's negative balance during the relevant period ($150.96), and applying a 6% annualized interest rate over the 14-day period, the maximum amount that CITIZENS was legally permitted to charge Plaintiff was $0.35.  In this case, CITIZENS charged $90.00, which was over 257 times the maximum legal rate.

42.    The Sustained Overdraft Fees charged to Plaintiff and others similarly situated for such advances of money are egregiously high, usurious, and illegal.

43.    By labeling its charge a Sustained Overdraft Fee, CITIZENS cannot mask the true nature of the charge, especially since it overtly identifies in its disclosures that the fee is tied to the time that the account is in a negative balance condition.

44.    Pennsylvania law applies to all customers in the Class.

45.    Plaintiff and those similarly situated have sustained damages based on CITIZENS' violation of Pennsylvania usury laws through its assessment and collection of the Sustained Overdraft Fee.

46.    The usurious transactions at issue all occurred within 4 years prior to the commencement date of this action.

47.    Plaintiff has complied with all conditions precedent to the filing of this complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and

judgment as follows:

1.    Certifying this matter as a Class pursuant to Rule 23(b)(2) and 23(b)(3);

2.    Designating Plaintiff as an appropriate Class Representative;

3.    Awarding Plaintiff and the Class restitution and damages, which are to be trebled

by statute;

4.    Awarding Pre-judgment interest at the maximum rate permitted by applicable law;

5.    Awarding reasonable attorneys' fees per statute;

6.    Awarding Costs to Plaintiff; and for

7.    Such other relief as this Court deems just and proper.

Dated: February ___, 2017

**DENITTIS OSEFCHEN PRINCE, P.C.**
STEPHEN DENITTIS (PA BAR NO. 80080)
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: 215-564-1721
Facsimile: 215-564-1759
sdenittis@denittislaw.com

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
JEFF M. OSTROW
JONATHAN M. STREISFELD
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*Pro Hac Vice Motion to be Filed*

**TYCKO & ZAVAREEI LLP**
JEFFREY D. KALIEL
2000 L Street, N.W., Suite 808
Washington, D.C. 20036

Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*Pro Hac Vice Motion to be Filed*